UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TAMIRA BACON<br>782 E 249th STREET<br>EUCLID, OH 44123 | )<br>)<br>) | CASE NO.<br><br>JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| PNC BANK, NAT'L ASSN.<br>300 FIFTH AVENUE<br>PITTSBURGH, PA 15222 | )<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| | ) | |
| Serve Also:<br>PNC BANK, NAT'L ASSN.<br>c/o Corporation Service Company<br>50 West Broad Street, Suite 1330<br>Columbus, OH 43214 | )<br>)<br>)<br>)<br>)<br>) | |
| | ) | |
| And | ) | |
| | ) | |
| STEFANIE DAVY<br>740 E. 250th STREET<br>EUCLID, OH 44132 | )<br>)<br>) | |
| Defendants. | | |

Plaintiff, Tamira Bacon, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

1. Bacon is a resident of the city of Euclid, county of Cuyahoga, state of Ohio.

2. PNC Bank ("PNC") is a resident of the state of Ohio.

3. PNC is a corporation for profit with a principal place of business located at 285 Babbitt Rd., Euclid, OH 44123.

4. Davy was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at PNC who acted directly or indirectly in the interest of PNC.

5. Davy was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.02.

6. All of the material events alleged in this Complaint occurred in Cuyahoga County, Ohio.

7. On November 16, 2020, the EEOC issued Bacon a Right to Sue letter based on her complaints that are detailed throughout this Complaint.

8. Based on the Right to Sue letter issued by the EEOC, as well as claims listed in this complaint, this court has personal and subject matter jurisdiction over these claims.

## FACTS

9. Bacon is a former employee of PNC.

10. Bacon is African American.

11. Davy did not participate in the decision to hire Bacon.

12. Davy is Caucasian.

13. Bacon worked for PNC as a Sales Service Associate.

14. Bacon began her employment at PNC on or about October 12, 2012.

15. Bacon was wrongfully terminated on July 25, 2019.

16. Throughout Bacon's nearly nine-year employment at PNC, she had no meaningful disciplinary history.

17. Bacon routinely received positive reviews and pay raises throughout her employment with PNC.

18. On or about February 6, 2019, Bacon was transferred to PNC's Shoregate branch in Euclid, OH.

19. Almost immediately after her transfer to the Shoregate branch, she experienced discrimination and harassment.

20. Two days after her transfer, Bacon became aware that Jill Delost, a white colleague, was taking clients from Bacon, and was cancelling her appointments.

21. Delost was cancelling Bacon's appointments with clients and rescheduling them with herself, in an effort to prevent Bacon from meeting with her clients.

22. On or about January 25, 2019, Bacon complained to Davy, explaining that Delost was purposefully interfering with Bacon's client relationships.

23. Davy informed Bacon that she would have a discussion with Delost and address her behavior.

24. In response to Bacon's report of racial discrimination, Davy filed a complaint against Bacon.

25. The same day, Bacon received a call from Human Resources department.

26. The Human Resources department informed Bacon that they were investigating her conduct, and not Delost's.

27. Davy contacted Human Resources and falsely accused Bacon of doing business with her friends and family.

28. Davy did not contact Human Resources regarding Delost's behavior.

29. After investigating Bacon, PNC concluded that the accusations of doing business with friends and family were baseless.

30. Neither Davy nor the HR department followed up or investigated Bacon's complaint against Delost.

31. Bacon was never interviewed about Delost.

32. Upon receiving the conclusions of the HR department, Davy again filed another complaint with HR against Bacon.

33. The second complaint alleged that Bacon was incorrectly entering clients' driver's license information into PNC's system.

34. After another investigation, PNC again found that Davy's accusations were baseless.

35. During the Spring of 2019, Davy took extended medical leave.

36. While Davy was out on leave, Delost and another white employee, Rachel Erickson, began harassing Bacon based on her race.

37. Delost and Erickson would make comments to Bacon when African American clients would enter the branch.

38. Delost and Erickson would tell Bacon "that's all you," referencing that Bacon should be the one to meet with African American clients, because she is an African American.

39. Delost and Erickson also subjected Bacon to suggestive questions about her race.

40. Delost and Erickson asked Bacon repeatedly if she would "date men outside of her own race."

41. Delost and Erickson followed up these inappropriate comments by saying that "white men take better care of their children than black men."

42. Erickson took the racial comments even further, telling Bacon to "not be ghetto" and to stop "walking like a slave" throughout the branch.

43. These racist comments deeply offended Bacon.

44. None of PNC's supervisors investigated these comments.

45. PNC did not interview Bacon.

46. PNC did not obtain a written statement from Bacon.

47. PNC did not interview Delost.

48. PNC did not obtain a written statement from Delost.

49. PNC did not interview Erickson.

50. PNC did not obtain a written statement from Erickson.

51. The only time Human Resources contacted Bacon was when they were investigating the baseless accusations Davy made against Bacon.

52. During Summer 2019, the Shoregate Branch became short-staffed.

53. Bacon was reassigned to serve as a teller.

54. When Bacon was reassigned, Delost was assigned all of Bacon's clients.

55. Despite having to fulfill the duties of a teller and a Personal Banker, Bacon met all of her productivity goals.

56. On or about June 19, 2019, Bacon's sixteen-year-old daughter was released from the hospital into Bacon's care.

57. Unable to leave her daughter home alone, Bacon took off June 28 and June 29 off to care for her daughter.

58. Bacon had already scheduled June 28 and June 29, 2019 off for doctor's appointments, but missed her own doctor's appointments to care for her disabled daughter.

59. Despite being informed of Bacon's situation, no one at PNC informed Bacon of her FMLA rights during her daughter's serious health issues.

60. In July 2019, Bacon learned that she could apply for FMLA, and that her protections would be retroactive and cover any absences she had to care for her daughter.

61. Bacon applied for FMLA leave, requesting that a "tardy" from June 19, 2019, as well as the June 28 and June 29, 2019 absences be applied retroactively.

62. Around the same time as the FMLA application, Bacon applied for a transfer to other PNC branches in order to escape the hostile environment at Shoregate.

63. Bacon applied for a position at the South Euclid, Ohio branch of PNC.

64. Bacon interviewed at the South Euclid branch, and believed that the interview went well and that the transfer would be effectuated.

65. When Bacon returned to the Shoregate branch after her South Euclid interview, Bacon was accosted by Davy.

66. Davy asked Bacon, "why don't you want to work here anymore?"

67. Bacon simply stated that she wanted a transfer and offered no additional comments.

68. Immediately following this conversation, Bacon was again called by PNC's HR department.

69. Yolanda Adams, an HR representative, told Bacon that Davy made a request that HR investigate Bacon for "ethics violations" related to her absences in June 2019.

70. On July 25, 2019, Bacon was informed that she was being terminated.

71. Adams told Bacon that PNC was concluding that Bacon "lied" about her reasons for being absent.

72. PNC did not request documentation from Bacon regarding her time off, in order to allow Bacon to refute Davy's, and now PNC's, accusations.

73. PNC did not consider that Bacon's June absences were covered by her application for FMLA leave.

74. PNC terminated Bacon five days after her application for FMLA leave, specifically for her FMLA-covered absences.

75. Due to PNC's wrongful termination, Bacon, with a disabled daughter at home, lost her sole source of income.

76. Due to PNC's wrongful termination, Bacon suffered emotional harm.

77. PNC terminated Bacon due to her repeated complaints about racial discrimination, Davy's ongoing complaints to HR about Bacon, and her requests for FMLA leave.

## COUNT II: RETALIATORY DISCRIMINATION

78. Bacon restates each and every prior paragraph of this complaint, as if it were fully restated herein.

79. As a result of the Defendant's discriminatory conduct described above, Bacon complained about the racial discrimination she was experiencing.

80. Subsequent to Bacon's discrimination complaints, Davy decided to file baseless complaints against Bacon with the HR department.

81. Despite HR finding these complaints baseless, Davy continued to use HR as a mechanism to terminate Bacon.

82. PNC's HR department never investigated Bacon's complaints, but rather engaged in repeated investigations against Bacon in retaliation for her speaking up.

83. PNC's HR department took no disciplinary action against Davy, Delost, or Erickson for their discriminatory behavior, furthering emboldening them to continue this behavior.

84. Defendant's actions were retaliatory in nature based on Bacon's opposition to the unlawful discriminatory conduct.

85. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

86. Bacon suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

87. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Bacon, she suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT VII: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

88. Bacon restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

89. Pursuant to 29 U.S.C. § 2601 *et seq*., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

90. PNC is a covered employer under the FMLA.

91. During her employment, Bacon qualified for FMLA leave.

92. During her employment, Bacon attempted to request FMLA leave by asking Defendants if she qualified to take FMLA leave.

93. Defendants failed to properly advise Bacon of her rights under the FMLA.

94. Defendants unlawfully interfered with Bacon's exercise of her rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

95. PNC 's act of writing Bacon up during her FMLA leave violated and interfered with Bacon 's FMLA rights.

96. Defendants violated section 825.300(c)(1) of the FMLA and interfered with Bacon 's FMLA rights when Defendants did not honor Bacon 's approved use of FMLA leave.

97. As a direct and proximate result of Defendants' conduct, Bacon is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorney's fees.

## COUNT VIII: RETALIATION IN VIOLATION OF THE FMLA

98. Bacon restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

99. During her employment, Bacon applied for FMLA leave.

100. After Bacon attempted to utilize her qualified FMLA leave, Defendants retaliated against her.

101. Defendants retaliated against Bacon by terminating her employment.

102. Defendants willfully retaliated against Bacon in violation of U.S.C. § 2615(a).

103. As a direct and proximate result of Defendants' wrongful conduct, Bacon is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT IX: RACE DISCRIMINATION

104. Bacon restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

105. Throughout her employment, Bacon was fully competent to perform her essential job duties.

106. Davy treated Bacon differently than other similarly situated employees based on her race.

107. Davy violated R.C. § 4112.02(A) *et seq.* by discriminating against Bacon due to her race.

108. On or about DATE OF TERMINATION, PNC terminated Bacon without just cause.

109. At all times material herein, similarly situated non-African-American employees were not terminated without just cause.

110. Defendants terminated Bacon based on her/his race.

111. Defendants violated R.C. § 4112.01 et. seq. when they terminated Bacon based on her race.

112. Bacon suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

113. As a direct and proximate result of Defendants' conduct, Bacon has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Bacon demands from Defendants the following:

(a) Issue an order requiring PNC to restore Bacon to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Bacon for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys fees and non-taxable costs for Bacon claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*s/ Andrew Pappert, Esq.*
Brian D. Spitz (0068816)
Andrew D. Pappert (0093964)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email: brian.spitz@spitzlawfirm.com
       drew.pappert@spitzlawfirm.com

*Attorneys For Plaintiff*

## **JURY DEMAND**

Plaintiff Tamira Bacon demands a trial by jury by the maximum number of jurors permitted.

>*s/ Andrew Pappert, Esq.*
>Andrew D. Papper (0093964)